## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SONY MUSIC ENTERTAINMENT,<br>SONY MUSIC ENTERTAINMENT US<br>LATIN, LLC, ULTRA RECORDS, LLC,<br>LAFACE RECORDS, LLC, ARISTA<br>MUSIC, ARISTA RECORDS, LLC,<br>RECORDS LABEL, LLC, RIMAS<br>ENTERTAINMENT, LLC and ZOMBA<br>RECORDING LLC,<br><br>Plaintiff,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC. and<br>DOES 1-50,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiffs Sony Music Entertainment; Sony Music Entertainment US Latin, LLC; Ultra Records, LLC; LaFace Records, LLC; Arista Music; Arista Records, LLC; Records Label, LLC; Rimas Entertainment, LLC and Zomba Recording LLC (collectively, "Sony Music" or "Plaintiffs"), for their Complaint and Demand for Jury Trial against Marriott International, Inc. ("Marriott" or "Defendant"), allege as follows:

## PRELIMINARY STATEMENT

1.      This is an action to stop Marriott's rampant infringement of Sony Music's valuable copyrights in some of the most popular sound recordings in the world, and recover damages for Marriott's willful conduct.

2.      Marriott is a behemoth of the hospitality industry.  It owns, operates, franchises and/or manages some of the most successful and well-known hotel brands and properties across the globe.

3.    Marriott also operates a social media empire, with millions of followers across multiple social media platforms and accounts.

4.    Marriott is responsible for social media accounts associated with Marriott's owned brands and owned hotels ("Owned Social Media Pages").

5.    Marriott is also responsible for the social media accounts associated with Marriott's managed hotels ("Managed Social Media Pages").

6.    Marriott is additionally responsible for the social media accounts for franchised hotels ("Franchised Social Media Pages" and together with the Owned Social Media Pages and Managed Social Media Pages, the "Marriott Social Media Pages").

7.    The Marriott Social Media Pages are populated with videos advertising and showcasing Marriott's brands and hotels.

8.    In January 2020, Sony Music notified Marriott that many of the Marriott Social Media Pages included videos using, without authorization, copyrighted sound recordings owned and/or controlled by Sony Music.

9.    By November 2020, Sony Music had identified hundreds of videos containing unlicensed Sony Music sound recordings on the Marriott Social Media Pages.

10.    Since that time, Sony Music has continued to give Marriott notice of its continuing infringing conduct on multiple occasions, including most recently on March 22, 2024.

11.    Marriott initially entered into a tolling agreement with Sony Music but then refused to enter into reasonable extensions or new tolling agreements and refused to timely identify which hotels Sony Music identified were managed or franchised, necessitating this lawsuit.

12.    Many of the videos containing unlicensed Sony Music sound recordings specifically identified as infringing are still on the Marriott Social Media Pages.

13.    Even after being put on notice of its infringing conduct, Marriott continues to

2

populate the Marriott Social Media Pages with new videos containing unlicensed Sony Music sound recordings.

14.     Because Marriott has known for years of Sony Music's claims, but has continued to use Sony Music sound recordings without authorization, Marriott's conduct is willful.

15.     In the time since Sony Music first put Marriott on notice of its unauthorized use of Sony Music sound recordings, Sony Music has identified at least 931 infringements of Sony Music's popular and valuable sound recordings in the United States alone.

16.     913 of those infringements were contained in videos posted on the Marriott Social Media Pages (collectively the "Marriott Videos").  Those infringements are listed in **Exhibit 1**, which is a representative list of infringing uses for which Marriott is responsible.[1]

17.     Sony Music has also identified eighteen infringements of Sony Music's popular and valuable sound recordings in videos promoting Marriott's brands and/or hotels by paid influencers on the influencers' own social media pages (collectively the "Marriott Influencer Videos").  Those infringements are listed in **Exhibit 2**, which is a representative list of infringing uses created and/or posted by third-party influencers for which Marriott is responsible.

18.     The scope of infringement that Sony Music has discovered on its own is, upon information and belief, only the tip of the iceberg, and Sony Music believes discovery in the case will reveal much more.[2]

19.     There are undoubtedly additional infringing videos Sony Music has yet to discover, which likely include content posted for only a limited time period on Instagram Stories, Snapchat,

---

[1] The URLs provided in Exhibit 1 are included to assist with identifying the infringing videos but the infringing videos often appear on more than one platform.

[2] This Complaint identifies Marriott posts and posts by Marriott influencers from the past three years (including, where appropriate, uses for which a tolling agreement applied) on Marriot Social Media Pages and the influencers' own social media pages for Marriott properties located in the United States.  Upon information and belief, Marriott's infringing activity is far broader, including on social media accounts associated with properties located outside the United States.

and the like – platforms Marriott also uses for social media marketing.[3]

20.     Upon information and belief, the infringing uses listed in Exhibit 1 were all posted on Marriott Social Media Pages.

21.     Upon information and belief, the infringing uses listed in Exhibit 2 were all posted on the social media pages owned and/or controlled by influencers compensated by Marriott.

22.     The sound recordings listed in **Exhibits 1 and 2** include some of the biggest hits by household names such as Beyoncé, Harry Styles, Britney Spears, Mariah Carey, Michael Jackson, Miley Cyrus, Shakira, and Doja Cat.

23.     The Marriott Videos and Marriott Influencer Videos are advertisements.

24.     The Marriott Videos and Marriott Influencer Videos promote Marriott's brands, properties, and services, and usually include video footage of Marriott-owned, Marriott-managed or Marriott-franchised properties.

25.     Sony Music's recordings often form the entire soundtrack to the Marriott Videos and Marriott Influencer Videos.

26.     Sony Music's recordings are central to the effectiveness and appeal of the Marriott Videos and Marriott Influencer Videos, which capitalize on the popularity, artistry, and entertainment value of those works.

27.     The Sony Music Recordings generally run the length of the Marriott Videos and Marriott Influencer Videos, and often include the catchiest or most familiar parts of those works.

28.     The use of Sony Music's recordings in the Marriott Videos and Marriott Influencer Videos allows these videos to operate like a paid advertising campaign, enabling Marriott to reach users of social media platforms that do not follow the Marriott Social Media Accounts.

---

[3] https://www.marketingdive.com/ex/mobilemarketer/cms/news/advertising/19386.html;
https://forbusiness.snapchat.com/inspiration/marriott-bonvoy-exceeds-roi-by3_4x-with-snapchat

29.     Marriott chose not to obtain permission or pay for its use of copyrighted music.

30.     Marriott's conduct has caused and continues to cause substantial and irreparable harm to Sony Music, while enriching Marriott at the expense of Sony Music and its artists.

31.     This action is necessary because Marriott has refused to enter into and/or extend reasonable tolling agreements, failed to stop its infringing conduct, and made no effort to enter into good faith negotiations to redress its infringements.

## JURISDICTION AND VENUE

32.     This Court has original subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101 *et seq.*, 28 U.S.C. §§ 1331 and 1338(a).

33.     The Court has personal jurisdiction over Marriott.

34.     Marriott is incorporated in the State of Delaware.

35.     Marriott is doing and has been doing business continuously in the State of Delaware.

36.     A substantial part of the wrongful acts committed by Marriott occurred in the State of Delaware, including by reproducing sound recordings owned by Sony Music, preparing derivative works based upon Sony Music's sound recordings, making such derivative works available for distribution, and directing, overseeing, contributing to, and/or benefitting from its influencers' infringement of Sony Music's sound recordings, within the State of Delaware.

37.     Venue is proper in this district under 28 U.S.C. § 1391(b) and 28 U.S.C. §1400(a).

38.     A substantial part of the acts of infringement, and other events and omissions complained of herein, occurred in this district.

39.     This is the district in which Marriott resides.

## THE PARTIES

### A.    *The Plaintiffs*

40.    Plaintiff Sony Music Entertainment ("SME") is a Delaware general partnership, engaged in the business of recorded music and headquartered in New York City.

41.    SME's principal place of business is located at 25 Madison Avenue, New York, New York 10010.

42.    Plaintiff Sony Music Entertainment US Latin, LLC ("Sony Latin") is a Delaware Limited Liability Company with its principal place of business at 3390 Mary St., Suite 220, Coconut Grove, Florida 33133.

43.    Plaintiff Ultra Records, LLC ("Ultra") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

44.    Plaintiff Zomba Recording LLC ("Zomba") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

45.    Plaintiff Arista Music ("Arista Music") is a New York partnership with its principal place of business at 25 Madison Avenue, New York, New York 10010.

46.    Plaintiff LaFace Records, LLC ("LaFace") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

47.    Plaintiff Arista Records, LLC ("Arista Records") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

48.    Plaintiff Rimas Entertainment, LLC ("Rimas") is a Limited Liability Company registered in the Commonwealth of Puerto Rico with its principal place of business at 644 Avenida Fernandez Juncos District View Office Center, Suite 501, San Juan, Puerto Rico, 00907.

49.    Plaintiff Records Label, LLC ("Records Label") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

50.     Sony Latin, Ultra, Zomba, Arista Music, Arista Records, LaFace, Rimas and Records Label are companies owned by or affiliated with SME.

51.     Sony Music is engaged in the business of producing, manufacturing, marketing, promoting, distributing, selling, and licensing sound recordings in the United States through various media.

52.     Sony Music invests substantial money, time, effort, and talent in creating, advertising, promoting, selling, and licensing unique and valuable sound recordings embodying the performances of its recording artists.

### B.     Defendant Marriott International, Inc.

53.     Defendant Marriott International, Inc. is incorporated in Delaware and headquartered in Maryland, with its principal place of business at 7750 Wisconsin Ave. Bethesda, MD 20814.

54.     On information and belief, Does 1 through 50 own and/or operate Marriott-managed hotels and/or Marriott-franchised hotels, are employees of Marriott, and/or are otherwise responsible for and proximately caused or are causing the harm and damages alleged in this Complaint.

55.     Plaintiffs are presently unaware of the true names and/or the involvement of the defendants sued as Does 1 through 50.  Plaintiffs will seek leave to amend this pleading to identify those defendants when their true names and involvement in the infringements and other wrongful conduct hereinafter described become known.

### SONY MUSIC'S BUSINESS

56.     Sony Music is home to some of the world's most distinguished record labels, including Columbia Records, RCA Records, Sony Music Nashville, Arista Records, Ultra

Records, and Epic Records, through which Sony Music contracts with its world-class recording artists.

57.    Through substantial investments of money, time, and creative effort, Sony Music and its recording artists have developed some of the most iconic sound recordings of all time, as well as many of today's biggest hits.

58.    Sony Music owns copyrights and/or exclusive rights in and to many of the most popular sound recordings in the world—including, for example, "All I Want For Christmas Is You" by Mariah Carey, "Flowers" by Miley Cyrus, "As It Was" by Harry Styles, "…Baby One More Time" by Britney Spears, "Thriller" by Michael Jackson, and "Say So" by Doja Cat—as well as the other sound recordings identified in **Exhibits 1 and 2** (the "Sony Music Recordings").

59.    Sony Music also invests heavily in signing and developing new artists.

60.    Sony Music often invests on the front end of an artist's career—through advances, recording, marketing, creative services, promotion, and more—looking to help the artist, and the artist's recordings, achieve success.

61.    Sony Music's financial incentives to invest in artists and their music flow directly from the protections afforded by the copyright laws, and the revenues, including licensing revenues, Sony Music earns from the sound recordings that it owns or controls.

62.    The investments made by Sony Music are protected by copyright law, which grants the copyright owner the exclusive right to, among other things, reproduce and distribute copyrighted works (in this case, sound recordings), publicly perform and transmit those works, and create derivative works from the originals.

63.    Each Sony Music Recording is either: a) covered by a valid copyright registration; b) one for which Sony Music has the rights to pursue these claims for sound recordings originating

outside of the United States under the Berne Convention; or c) is a sound recording fixed before February 15, 1972, and included on a schedule filed with the Copyright Office pursuant to the Orrin G. Hatch-Bob Goodlatte Music Modernization Act.

64.    Licensing the use of sound recordings—including for use in internet-based media—is a substantial revenue driver for all music companies, including Sony Music, and especially so over the last decade.

65.    Sony Music regularly licenses its content for use in commercials, films, video games, and other audiovisual works, including advertisements that are uploaded to, distributed and publicly performed on websites and social media.

66.    An important portion of Sony Music's return on its investment, which it shares with its recording artists, comes from licensing its recordings to others who use those sound recordings in videos, television shows, commercials, social media, and the like.

67.    Companies pay substantial sums to use popular Sony Music sound recordings in digital advertising content, including in videos posted by paid influencers, on YouTube, Instagram, Facebook, TikTok, and other digital platforms.

68.    Sony Music has licensing agreements with many types of companies including with various hospitality companies that compete with Marriott, and with companies in related markets, often including the right to use Sony Music's content on the internet and on social media.

69.    Those who use Sony Music sound recordings are obligated to follow copyright laws and obtain permission from Sony Music.

70.    However, with respect to hundreds, if not thousands, of advertisements containing popular music, Marriott did not.

### MARRIOTT'S SYSTEMIC INFRINGEMENT ON SOCIAL MEDIA

**B.** *The Importance of Social Media to Marriott's Marketing Strategy*

71.     Marriott relies heavily on social media marketing to build and promote its brands and hotel properties, whether owned, managed, or franchised.

72.     Marriott has engaged in concerted social media marketing efforts, including on Facebook, Instagram, YouTube, Twitter, Snapchat, TikTok, and other digital platforms to increase its brand value, cachet, sales, and customer base.

73.      Marriott has amassed millions of followers across the social media platforms and accounts for its over 30 brands and countless individual properties.

74.     Marriott Bonvoy, for example, has amassed 1.6 million followers on Instagram, alone.[4]

75.     Many of Marriott's other brands enjoy Instagram follower counts in the hundreds of thousands.[5]

76.     These counts do not include the various social media accounts for each of the brands' individual hotel properties, many of which boast substantial followings in their own right.[6]

77.     As of May 9, 2024, a search for the hashtag #marriott yields 1.6 million videos on Instagram alone.[7]

78.     Marriott recognizes the importance of social media videos in driving its success.

---

[4] https://www.instagram.com/marriottbonvoy/?hl=en
[5] https://www.instagram.com/ritzcarlton/?hl=en (The Ritz-Carlton; 787K followers);
https://www.instagram.com/marriotthotels/?hl=en (Marriott Hotels; 577K followers);
https://www.instagram.com/whotels/?hl=en (W Hotels; 418K followers);
https://www.instagram.com/sheratonhotels/?hl=en (Sheraton; 215K followers);
https://www.instagram.com/jwmarriotthotels/?hl=en (JW Marriott; 185K followers);
https://www.instagram.com/westin/?hl=en (Westin; 170K followers)
[6] *See, e.g.*, https://www.instagram.com/jwmarcoisland?igsh=N2tvamNzZHlhMzNo (JW Marco Island; 87.2K followers); https://www.instagram.com/wmiamihotel?igsh=MXBiajZrcnhpbG03aQ== (W Hotel Miami; 71.5K followers); https://www.instagram.com/sheratonwaikiki?igsh=eHg1bWlwNG8xZThz (Sheraton Waikiki Beach Resort; 58.7K followers)
[7] https://www.instagram.com/explore/tags/marriott

79.     According to Marriott's former CEO and president, Marriott is "[m]ore and more … devoting resources and talented associates to paying attention to online customer feedback and to connecting with guests" on social media.[8]

80.     Marriott reportedly outspends its peer hotels on social media ads, purportedly securing a 93% "share of voice" in paid-for social media advertising.[9]

81.     Marriott's social media marketing efforts have been in conscious disregard of the intellectual property rights of Sony Music and, upon information and belief, other major record labels, as well as music publishing companies.

**C.      *Marriott's Brands and Properties***

82.     Marriott touts itself as "a brand leader … [o]ffering the most powerful portfolio in the industry," with "more than 30 leading brands and nearly 8,800 properties in 139 countries and territories . . . ."[10]

83.     Marriott's portfolio of brands includes Marriott Bonvoy, The Ritz-Carlton, St. Regis, W Hotels, Sheraton, Westin, JW Marriott, Marriott Hotels, and many more.

84.      Marriott's properties generally fall into three categories: owned, managed, and franchised.

85.     On information and belief, Marriott is directly responsible for the social media accounts for each type of property.

86.     Upon information and belief, Marriott requires all its properties – whether owned, managed, or franchised – to conform to specific, written guidelines and policies for social media advertising.

---

[8] https://www.linkedin.com/pulse/my-valentine-social-media-arne-sorenson/
[9] https://www.phocuswire.com/Marriott-outspends-hotel-rivals-on-social-media-ads
[10] https://www.marriott.com/marriott/aboutmarriott.mi

### 1.   *Marriott's Owned Properties and Brands.*

87.   Marriott's owned properties and brands are owned, managed, and run by Marriott, including the owned properties' and brands' social media pages.

### 2.   *Marriott's Managed Properties.*

88.   Marriott runs and manages the hotels at its managed properties, including their social media pages.

89.   Upon information and belief, third parties (some of which may be affiliated with Marriott) own the real property at Marriott's managed properties.

90.   Marriott manages over 2,100 hotels globally.

91.   In a recent 10-K filing, Marriott stated that "[u]nder our management … agreements, hotel owners … participate in certain centralized programs and services, such as marketing …. We operate these programs and services for the benefit of our hotel owners."[11]

92.   Marriott's management agreement states that Marriott "supervise[s], direct[s] and control[s] the management, promotion and operation" of its managed hotels.[12]

93.   Marriott's management agreement states that Marriott "recruit[s], employ[s], supervise[s], direct[s], and discharge[s] the employees" at its managed hotels.[13]

94.   Marriott's management agreement states it "[a]rrange[s] for and supervise[s] public relations and advertising" for its managed hotels.[14]

95.   Marriott's management agreement states, "[t]he operation of the Hotel shall be under the exclusive supervision and control of [Marriott]…."[15]

---

[11] https://marriott.gcs-web.com/static-files/0f66a698-c5bd-4fdd-9c03-95b3111600e9 at p.42
[12] https://contracts.justia.com/companies/hospitality-properties-trust-660/contract/106143/; *see also* https://www.lawinsider.com/contracts/avwQ0Wtraeh;
[13] *Id.*
[14] *Id.*
[15] *Id.*

96.     Under Marriott's management agreements, property owners pay Marriott a base management fee plus an incentive fee based on operating profit.

97.     Upon information and belief, the fee received by Marriott includes revenue derived from online and social media advertising.

98.     In many instances, the Facebook pages for Marriott-managed properties indicate that "Marriott International, Inc. is responsible for this Page" and has "completed [Facebook's] verification process," as in the below example:



99.     Marriott hires employees to be "the voice of more than 7,300 hotels" on social media.[16]

100.    Marriott employees are "responsible for the moderation for all Marriott properties" on social media.[17]

---

[16] https://www.linkedin.com/in/mcintyregwen/ (LinkedIn profile of the "Senior Manager, Social Marketing, Loyalty" at Marriott International).

[17] https://www.linkedin.com/in/jan-matan-69abb12b/ (LinkedIn profile of the "Social Media Liaison" at Marriott International).

101.   On its "Managed by Marriott" webpage, Marriott lists a "case study" in which it was "extremely aggressive in marketing" one of its managed properties, and "worked with many different social influencers establishing one of the most active social media presences for the brand" on behalf of one of its managed properties.[18]

### 3.   *Marriott's Franchised Properties.*

102.   Marriott franchises some of its brands, allowing hotel owners and operators to use, among other things, Marriott names, trademarks and systems at franchised hotels.

103.   Upon information and belief, Marriott operates or is directly involved in operating the Franchised Social Media Pages for at least some, if not all, of its franchised hotels.

104.   Under Marriott's franchise agreements, Marriott receives an initial application fee and continuing royalty fees calculated as a percentage of the hotel's revenues.[19]

105.    Upon information and belief, the royalty fee includes revenue derived from online and social media advertising.

106.   In a recent 10-K filing Marriott states that "[u]nder our hotel franchising arrangements, we generally receive an initial application fee and continuing royalty fees, which typically range from four to seven percent of room revenues for all brands, plus up to four percent of food and beverage revenues for certain full-service brands" and "[f]ranchisees contribute to our centralized programs and services, such as our Marriott Bonvoy loyalty program, reservations, and marketing."[20]

---

[18] https://www.hotel-development.marriott.com/how-we-work-together/managed-by-marriott
[19] https://www.hotel-development.marriott.com/resourcefiles/fdd-document/2023-mhr-fdd-3-31-2023.pdf
[20] *Supra*, note 11 at pp. 4-5

107.    Marriott's franchise agreements require franchisees to "deliver samples of marketing materials not provided by [Marriott] and obtain prior approval from [Marriott] before any use."[21]

108.    Marriott retains the right to use any advertising material developed by a franchisee in connection with other Marriott hotels "without compensation to Franchisee."[22]

109.    Accordingly, Marriott affirmatively approves or, at the very least, has a right to approve all franchised hotel advertising, including on social media.

110.    Facebook pages for certain franchised properties also indicate that "Marriott International, Inc. is responsible for this Page" and has "completed [Facebook's] verification process," as in the below example:



111.    Marriott's franchise disclosure document states that "[Marriott] or our designee will direct all advertising, promotional, and public relations programs and activities of the Marketing Fund using our discretion over the concepts, materials, and media used in the programs and activities and the placement and allocation" and that the "[Franchisee] must use signs and other

---

[21] *Supra*, note 19 at p. 77
[22] *Id.* at Ex. C, p. 6

marketing materials only in the places and manner approved or required by [Marriott] and in accordance with the standards and applicable law" and "[Franchisee] must deliver samples of marketing materials not provided by us and obtain prior approval from us before any use."[23]

112.    The franchise disclosure document also provides that the Marketing Fund is put in place to direct advertising and marketing activities and is employed to "promote general public recognition of the Marriott hotel brand . . . ."[24]

### D.    *Marriott's Influencer Marketing*

113.    Other Marriott Videos are created by so-called "influencers", sometimes through formal partnerships with Marriott, who promote Marriott's brands or properties to their social media followers, including but not limited to, in the Marriott Influencer Videos.

114.    Upon information and belief, the influencers who created Marriott Influencer Videos received free hotel stays, cash payments, discounts and/or a share in Marriott's sales generated from the infringing Marriott Influencer Videos in return for their creation of such infringing videos.

115.    Marriott copies many of the Marriott Influencer Videos to the Marriott Social Media Pages to advertise its brands and/or properties.

116.    On information and belief, Marriott has direct agreements with a number of influencers, or has otherwise contracted for the influencers' services.

117.    Marriott advertises an "Affiliate Program" in which influencers can "earn commissions on completed hotel stays" in connection with their promotion of Marriott brands and/or hotels.[25]

---

[23] *Id.* at p. 76
[24] *Id.*
[25] https://www.marriott.com/marriott/affiliateprogram.mi

118.   Marriott boasts that its influencer "affiliates" work with a "Dedicated Affiliate Team – We have a dedicated, highly experienced team of online marketers who are here to help you succeed."[26]

119.   Marriott has engaged in formal collaborations with several high-profile social media influencers and celebrities.

120.   Marriott uses Marriott Influencer Videos just like, and in lieu of, traditional advertisements and commercials, and to great effect.

121.   By Marriott's own account, "[Marriott's] influencer program helped drive four times more traffic to our brand site year over year and contributed to steady increases in Brand Health metrics across the board."[27]

122.   By working with popular influencers, Marriott draws each of these influencers' followers to the Marriott Social Media Pages and to the Marriott Videos and Marriott Influencer Videos.

123.   Upon information and belief, Marriott actively reviews and approves, or at the very least has the right to review and approve, videos posted by Marriott influencer's, including the Marriott Influencer Videos. In some instances, Marriott has commented on Marriott Influencer Videos.

124.   Upon information and belief, Marriott also actively selected, copied, and re-posted numerous Marriott Influencer Videos to the Marriott Social Media Pages.

125.   Upon information and belief, there are many more infringing videos created by Marriott's influencers, but Sony Music is unable to discover all infringing videos as many of those influencers do not disclose that they are being compensated by Marriott for the advertisement,

---

[26] *Id.*
[27] https://shortyawards.com/12th/marriott-hotel-ambassadors-let-their-minds-travel

contrary to FTC guidelines, and upon information and belief, some of videos posted by Marriott influencers are only posted for a limited period of time.

**E.**   ***Marriott's Infringing Videos***

126.   Marriott recognizes the importance of music to its marketing strategy.

127.   Music, including hundreds of unlicensed sound recordings owned by Sony Music, is essential to the effectiveness of Marriott's extensive social-media marketing campaigns.

128.   It is no accident that the Marriott Videos use some of the most popular sound recordings in Sony Music's library.

129.   The Marriott Social Media Pages are replete with marketing videos that rely on popular music for their effectiveness.

130.   According to Marriott's former Vice President of Buzz Marketing and Partnerships, "[Marriott's] music partnerships help to create strong emotional connections with [Marriott's] members and guests, ultimately inspiring them to want to continue to stay with [Marriott] … By tapping into the universal language of music, [Marriott] [is] able to provide unique experiences for members . . . ."[28]

131.   But there's a problem with Marriott's approach: it regularly exploits videos that contain unlicensed sound recordings owned by Sony Music and others.

132.    The use of popular and trending music in the Marriott Videos is critical to Marriott's marketing program's reach and penetration.

133.   On algorithm-driven social media platforms like Instagram and TikTok, adding popular sound recordings to a post causes it to appear in the feeds of users who are interested in the *music* and might not otherwise come across the Marriott posts.

---

[28] https://www.chiefmarketer.com/w-hotels-creates-one-kind-experience-coachella/

134.     Including these popular sound recordings leads users to discover posts when searching on the platform for content incorporating certain artists, songs or music-related tags.

135.     For example, the Instagram page for the W Fort Lauderdale, a hotel managed by Marriott, posted an advertisement featuring Beyoncé's "Alien Superstar" in April 2023. That video has over 94,500 views, making it the most viewed reel on that social media account.  Currently, the Instagram page for the W Fort Lauderdale has approximately 33,300 followers.[29]

136.     Marriott is well aware that popular music is a key way to draw consumers to its advertisements—all things being equal, including the use of similar hashtags, videos that use popular music will generate significantly more views than videos that feature non-major label music, production music or no music at all.

137.     For example, a Marriott Video posted to the Instagram account for the Sheraton Grand Los Angeles on April 1, 2024, exploiting (without authorization) the Sony Music Recording "Unwritten" by Natasha Bedingfield, had 11,200 views as of May 9, 2024[30] compared to the less than 700 views for posts on the same account using music from a non-major music label, production music or no music at all.[31]

138.     Marriott also engages in paid advertising on social media, including, among other things, "boosting" of social media videos exploiting music, including videos with Sony Music sound recordings, in an effort to increase their reach.[32]

---

[29] https://www.instagram.com/reel/CreAnLHgiYR/-
[30] https://www.instagram.com/reel/C5O2Ii3JRLf/
[31] https://www.instagram.com/reel/C4LWLIZBgat/ (Sheraton Grand Los Angeles post with 437 views as of May 9, 2024 exploiting music from a non-major music label); https://www.instagram.com/reel/CjGQDyktbpV/ (Sheraton Grand Los Angeles post with 267 views as of May 9, 2024 exploiting non-major label music); https://www.instagram.com/reel/B4k6uDTFROf/ (Sheraton Grand Los Angeles post with 175 views as of May 9, 2024 utilizing production music)
[32] https://www.facebook.com/ads/library/?active_status=all&ad_type=political_and_issue_ads&country=US&id=740412602963455&view_all_page_id=20372413613&search_type=page&media_type=all

139.    Marriott's infringement is rampant, and not limited to content controlled by Sony Music.

140.    In addition to the hundreds of infringements that were posted in the United States in the last three years involving Sony Music's sound recordings that Sony Music has identified on its own, upon information and belief, Marriott has used, without permission, many sound recordings owned and controlled by numerous other record labels, as well as musical compositions owned and controlled by various music publishers.

141.    Marriott has also created, posted, and/or caused its managed and franchised hotels to create and/or post, videos on social media channels ostensibly controlled by ex-U.S. entities that contain unlicensed sound recordings.

142.    Marriott is fully aware that the Marriott Videos contain popular and unlicensed sound recordings.

143.    Marriott's selection of Sony Music Recordings for use in the Marriott Videos is deliberate and meant to enhance the Marriott Videos' commercial appeal.

144.    Marriott actively integrates Sony Music Recordings into the Marriott Videos, including by explicitly referencing the Sony Music Recording in the Marriott Video itself, or in the Marriott Video's caption.

145.    As shown in Figure 1 below, a Marriott Video posted to the Instagram channel for the W Scottsdale, exploits the Sony Music Recording "Winter Wonderland" by Kaskade to promote an event bearing the same name, and explicitly references the title of the track in the video and caption.



**Figure 1**

146.     Marriott purposefully selects certain sound recordings for use in the Marriott Videos because they directly relate to Marriott's marketing campaigns or properties.

147.     As shown in Figure 2 below, one of the Marriott Videos exploits the Sony Music Recording "Texas Hold 'Em" by Beyoncé to advertise one of Marriott's Texas properties (The Ritz-Carlton Dallas).



**Figure 2**

148.    Similarly, as shown in Figure 3 below, another of the Marriott Videos exploits the

Sony Music Recording "Miami" by Will Smith to advertise one of Marriott's Miami properties

(The W Miami).



**Figure 3**

149.    As pictured in Figure 4 below, Marriott exploited the Sony Music Recording "Girls Just Want To Have Fun" by Cyndi Lauper in a video portraying a "Girls' trip" at its JW Marriott Los Angeles property.



**Figure 4**

150.    In another example, pictured in Figure 5 below, Marriott exploited the Sony Music Recording "Sleigh Ride" by The Ronettes in a video promoting a "Grinch themed pop-up bar" around Christmastime at the Moxy Downtown Nashville franchised property.



**Figure 5**

151.   Marriott strategically posts videos incorporating Sony Music Recordings shortly after their release dates.

152.   For example, Marriott made uses of Madison Beer's "Make You Mine", Beyoncé's "Texas Hold 'Em", Lost Frequencies & David Kushner's "In My Bones", and Nate Smith's "Here's to Hometowns" within one month of those tracks' release dates.

153.   Marriott often exploits recordings repeatedly when they are at the top of the charts or trending online.

154.   For example, Marriott posted the infringing Marriott Video in Figure 2 above, exploiting Beyoncé's "Texas Hold 'Em" on February 24, 2024—three days after the track debuted

at No. 1 on Billboard's Hot Country Songs chart,[33] and two days before the track hit No. 1 on Billboard's Hot 100.[34]  Marriott then exploited that track three more times within a month of the track hitting No. 1 and remaining at least in the top 5 throughout that time period. [35]

155.    In the last three years alone, Marriott made at least *twenty* uses of "All I Want for Christmas Is You" by Mariah Carey—one of Sony Music's most popular recordings—in late November or December, when the track is most in-demand.[36]

156.    Marriott's use of newly released, popular, and trending sound recordings in the Marriott Videos was deliberate and done to maximize the reach and penetration of the videos. Indeed, businesses that actually seek licenses pay significant amounts to use popular music in commercials and advertisements, including on social media.

157.    According to a study done by Texas A&M researchers, individuals viewing advertisements including music in the background had "higher emotional arousal and attention level" than those who saw the commercial without music.[37]

158.    Articles discussing the use of music in advertisements suggest that music makes campaigns more memorable and effective and "keep[s] viewers interested and wanting more."[38]

159.    The advantages of using music in advertising is bolstered by the effectiveness of social media marketing in general, "[s]ocial media is a strong tool for brands to reach this generation . . . ."[39]

---

[33] https://www.npr.org/2024/02/21/1232827781/beyonce-texas-hold-em-country-chart

[34] https://www.billboard.com/lists/beyonce-texas-hold-em-number-one-hot-100/

[35] https://www.billboard.com/charts/hot-100/

[36] *See, e.g.*, https://www.billboard.com/music/chart-beat/mariah-carey-all-i-want-for-christmas-is-you-number-one-hot-100-14-weeks-1235565006/ (noting that the track "ruled the [Billboard] Hot 100 over five holiday seasons" as of 2023).

[37] https://today.tamu.edu/2021/08/16/how-background-music-in-ads-affects-consumers/

[38] https://www.forbes.com/sites/forbesagencycouncil/2023/09/08/boosting-the-creative-journey-how-brands-and-creators-can-use-instagrams-latest-updates/?sh=3332f93444e8

[39] https://skift.com/2023/03/22/gen-z-is-influencing-hotels-to-rethink-strategies-a-skift-deep-dive/

160.   A recent HubSpot study found that "short-form video is still the most popular and effective content format on social media.  They continue to capture the audience's attention."[40]

161.   According to a TikTok study, "67% of TikTok users would prefer to see videos from brands featuring popular or trending songs on TikTok."[41]

162.   TikTok also advises brands that "[u]sing a trending song in your brands' TikTok content is a great way to capture [users'] attention."[42]

163.   Another TikTok-commissioned study shows that when TikTok limited the amount of popular music that many users in Australia could access, it saw a marked decrease in users and user engagement.[43]

164.   As TikTok states, "music is at the heart of the TikTok experience" and is "the glue that connects TikTok's disparate threads."[44]

165.   The Marriott Videos are standard commercial uses of sound recordings.

166.   The Marriott Videos are textbook examples of how music is typically used in commercial advertisements.

167.   Sony Music and other music companies regularly license the use of their sound recordings for just such commercial uses.

168.   Marriott knows how to license when it so desires and has done so on at least one occasion when it previously entered into a license with Sony Music for the use of a Sony Music sound recording on social media in relation to the Sheraton Hotel brand.

---

[40] https://www.spiceworks.com/marketing/marketing-strategy/news/instagram-offers-new-ad-tools-and-surfaces-to-help-brands/#:~:text=According%20to%20a%20recent%20study,Instagram%20Reels%20on%20the%20platform

[41] https://newsroom.tiktok.com/en-us/new-studies-quantify-tiktoks-growing-impact-on-culture-and-music (although this statement and the following specifically discuss TikTok the principles and concepts equally apply to other social media platforms

[42] *Id.*

[43] https://www.bloomberg.com/news/articles/2023-03-22/tiktok-lost-customers-when-it-took-away-music-in-australia?sref=Adr3lZQP

[44] https://Newsroom.tiktok.com/en-us/year-on-tiktok-music-report-2021

### F.  *Marriott's Direct Infringement*

169.    Upon information and belief, Marriott creates and/or posts Marriott Videos to the social media accounts for the brands and properties it owns.

170.    Upon information and belief, Marriott is a verified owner of and is responsible for managing and/or operating the Facebook accounts for Marriott-managed properties.

171.    Upon information and belief, Marriott is responsible for creating and/or posting Marriott Videos to Facebook accounts for Marriott-managed properties and/or for distributing Marriott Videos to users of Facebook.

172.    Upon information and belief, the Facebook accounts for Marriott-managed properties are linked to the Instagram accounts for those same properties, and Marriott has ownership of and is responsible for managing and/or operating the Instagram accounts for Marriott-managed properties. Upon information and belief, many videos posted on the Facebook accounts for the Marriott-managed properties, including Marriott Videos, are also posted to the Instagram accounts for those properties on or around the same date.[45]

173.    Upon information and belief, Marriott is responsible for creating and/or posting Marriott Videos to Instagram accounts for Marriott-managed properties, and/or for distributing the Marriott Videos to users of Instagram.

174.    Upon information and belief, Marriott is responsible for managing and/or operating other social media accounts for Marriott-managed properties.

175.    Upon information and belief, Marriott is responsible for creating and/or posting Marriott Videos to other social media accounts for Marriott-managed properties and/or distributing the Marriott Videos to the users of those platforms.

---

[45] *See e.g.,* https://www.instagram.com/reel/CsTjOe7vRrf/; https://www.facebook.com/reel/493390742933319

176.    Upon information and belief, Marriott creates and/or posts Marriott Videos to the Managed Social Media Pages for properties it manages and/or distributes the Marriott Videos to users of the social media platforms on which the Managed Social Media Pages exist.

177.    Upon information and belief, Marriott is a verified owner of and is responsible for managing and/or operating the Facebook accounts for certain Marriott-franchised properties.

178.    Upon information and belief, Marriot is responsible for creating and/or posting Marriott Videos to Facebook accounts for certain Marriott-franchised properties and/or for distributing the Marriott Videos to users of Facebook.

179.    Upon information and belief, the Facebook accounts for Marriott-franchised properties are linked to the Instagram accounts for those same properties, and Marriott also has ownership of and is responsible for managing and/or operating the Instagram accounts for certain Marriott-franchised properties. Upon information and belief, many videos posted on the Facebook accounts for the Marriott-franchised properties, including the Marriott Videos, are also posted to the Instagram accounts for those properties on or around the same date.[46]

180.    Upon information and belief, Marriot is responsible for creating, and/or posting Marriott Videos to Instagram accounts for certain Marriott-franchised properties and/or for distributing the Marriott Videos to users of Instagram.

181.    Upon information and belief, Marriott is responsible for operating and/or managing the social media accounts for certain Marriott-franchised properties on other social media platforms.

182.    Upon information and belief, Marriot is responsible for creating and/or posting Marriott Videos to other social media accounts for certain Marriott-franchised properties and/or

---

[46] *See e.g.,* https://www.instagram.com/reel/CaVfJKWFjRi/;  https://www.facebook.com/reel/736708410706240

distributing the Marriott Videos to the users of those platforms.

183.   Upon information and belief, Marriott creates and/or posts Marriott Videos to the Franchised Social Media Pages for franchised properties and/or distributes the Marriott Videos to users of the social media platforms on which the Franchised Social Media Pages exist.

184.   In the Marriott Videos, Sony Music Recordings are duplicated and synchronized with visual content without permission, creating an unauthorized derivative work, all of which constitutes direct copyright infringement.

185.   When posting the Marriott Videos to Marriott's Social Media Pages, Marriott makes an unauthorized copy of the Sony Music Recordings, which constitutes direct copyright infringement.

186.   Marriott distributes the Marriott Videos through Facebook, Instagram, and other digital platforms when it makes the Marriott Videos available on those platforms, which users download and/or share, which constitutes direct copyright infringement.

**G.**   ***Secondary Liability for Infringement by Marriott Managed and Marriott Franchised Hotels***

187.   In so far as Marriott is not directly liable for creating and/or posting the Marriott Videos to the social media accounts of Marriott-managed or Marriot-franchised hotels and distributing the Marriot Videos (as applicable), Marriott is secondarily liable for the direct infringements by the Marriott-managed and Marriott-franchised hotels.

*1.*   *Secondary Liability for Managed Hotels' Activities*

188.    Upon information and belief, to the extent that the Marriott Videos on the social media accounts of the Marriott-managed hotels are not created and/or posted by Marriott, the Marriott-managed hotels create and/or post such Marriott Videos to the hotel's social media account and distribute those Marriott Videos, and thus engage in direct infringement.

a.   *Marriott's Vicarious Liability for Managed Hotels' Infringements*

189.   Marriott receives a direct benefit from the Marriott-managed hotels' infringement through the increased revenue it receives as a result of the Marriott Videos, including without limitation through increased hotel bookings, money spent at the hotels, and advertising revenue, as well as from the increased brand awareness and value generated by the infringing advertisements.

190.   Marriott-managed hotels pay Marriott management fees which are, upon information and belief, at least seventeen percent of their gross revenue.[47]

191.   The Marriott Videos lend legitimacy to the Marriott-managed hotels and draw to consumers to stay at the Marriott-managed hotels and use the services and facilities offered at those hotels by, among other things, including click-through booking options, thus increasing Marriott's management fees.

192.   Marriott possesses the right and ability to supervise or control the infringement through, among other things, its agreements with the Marriott-managed hotels and/or its right and ability to operate and control the Managed Social Media Pages, and has (i) the right to direct and/or review the advertising the Marriott-managed hotels engage in and (ii) the right and ability to cause the Marriott Videos to be removed from the Managed Social Media Pages.  Upon information and belief, Marriott has exercised such right and ability by, among other things, causing certain Marriott-managed hotels to remove some specific Marriott Videos after Sony Music notified Marriott of its infringement.

---

[47] https://www.deseret.com/2002/10/6/19681381/property-owners-marriott-face-off/

b.   *Marriott's Contributory Liability for Managed Hotels' Infringements*

193.    Marriott knew or should have known of the Marriott-managed hotels' infringement or was willfully blind to such infringement.

194.    Upon information and belief, Marriott reviewed and approved the Marriott Videos, including but not limited to the use of the Sony Music Recordings in such videos.  Marriott was aware that the use of such Sony Music Recordings was a violation of copyright law as terms of use of the social media platforms at issue specifically warned Marriott that the use of copyrighted content without permission is prohibited.

195.    Upon information and belief, Marriott tracks social media posts that tag Marriott properties, including those made by Marriott-managed hotels.

196.    Marriott's team "operates around the clock [and] sifts through over 300,000 guests posts from Marriott properties around the world," and uses geo-fencing to "see every public posting on a social-media platform done from within their properties."[48]

197.    According to Marriott's former President and CEO, Marriott employs "social media experts" who "surface Twitter, Facebook, Instagram and Weibo public posts" tagging "one of [Marriott's] 6,000-plus properties."[49]

198.    Marriott was also aware of specific infringing posts by the Marriott-managed hotels that Sony Music identified in prior communications with Marriott, and through additional specific notices sent by or on behalf of other third-party content owners or the platforms themselves. Despite that knowledge, Marriott, to this day, permits its managed hotels to continue to post videos containing Sony Music sound recordings.

199.    Marriott causes or materially contributes to Marriott-managed hotels' infringing

---

[48] https://www.cnbc.com/2016/08/02/why-marriott-looks-at-what-you-post-on-social-media-from-your-room.html
[49] https://www.linkedin.com/pulse/my-valentine-social-media-arne-sorenson/

activity by allowing the managed hotels to continue to post the Marriott Videos on the Managed Social Media Pages.

200.    Upon information and belief, Marriott, through its agreements with the managed hotels, has the right to remove, or cause its managed hotels to remove, the Marriott Videos from the social media channels at issue, but has decided to remove or require removal of only a small fraction of the infringing videos Sony Music previously identified.

201.    Upon information and belief, Marriott, through its agreements with the managed hotels, has the right to penalize its managed hotels or even terminate its relationship with the managed hotels for violations of federal law, including copyright law.  Yet, Marriott has refused to penalize its managed hotels or end its relationship with such hotels despite its knowledge of these hotels' infringing activity, instead choosing to continue to offer its services, including its marketing services, to assist with, approve, and implement the infringing advertising, lending its brand name and trademark to Marriott-managed hotels for use in advertising and employing individuals and developing tools to assist the Marriott-managed hotels with development of social media channels and branding.[50]

### 2.    *Secondary Liability for Franchisees' Activities.*

202.    Upon information and belief, to the extent that the Marriott Videos on the social media accounts of the Marriott-franchised hotels are not created and/or posted by Marriott, the Marriott franchised hotels create and/or post such Marriott Videos to social media accounts for those franchised hotels, and distribute those Marriott Videos, and thus engage in direct infringement.

---

[50] https://www.grupodiestra.com/wp-content/uploads/2021/07/JW-Social-Media-General.pdf

a.   *Marriott's Vicarious Liability for Franchisees' Infringements*

203.    Marriott receives a direct benefit from the Marriott-franchised hotels' infringement through increased revenue as a result of the Marriott Videos, via ongoing, revenue-based fees, including without limitation from increased hotel bookings and money spent at the hotels, advertising revenue, as well as from the increased brand awareness and value generated by the infringing advertisements.

204.    The Marriott Videos lend legitimacy to the Marriott-franchised hotels and draw consumers to stay at the Marriott-franchised hotels and use the services and facilities offered at those hotels by, among other things, including click-through booking options, thus increasing the revenue-based fees Marriott receives.

205.    Marriott possesses the right and ability to supervise or control the infringement through, among other things, its agreements with the franchisees and/or its right to operate and control the Franchised Social Media Pages, and has the right to direct and/or review the advertising the Marriott franchisees engage in.

206.    Marriott's right and ability to control the infringing activity is evidenced by the franchise disclosure document, "[Marriott] or our designee will direct all advertising, promotional, and public relations programs and activities of the Marketing Fund using our discretion over the concepts, materials, and media used in the programs and activities and the placement and allocation" and the "[Franchisee] must use signs and other marketing materials only in the places and manner approved or required by [Marriott] and in accordance with the standards and applicable law" and "[Franchisee] must deliver samples of marketing materials not provided by us and obtain prior approval from us before any use."[51]

---

[51] *Supra*, note 19 at p.76-77

207.    Upon information and belief, Marriott also possesses the right and ability to cause the Marriott Videos to be removed from the Franchised Social Media Pages.  Upon information and belief, Marriott has exercised such right and ability by, among other things, causing certain Marriott-franchised hotels to remove some specific Marriott Videos after Sony Music notified Marriott of its infringement.

b.   *Marriott's Contributory Liability for Franchisees' Infringements*

208.    Marriott knew or should have known of the Marriott franchisees' infringement or was willfully blind to such infringement.

209.    Per Marriott's franchise disclosure document, Marriott directs most of the advertising and marketing done by franchisees.[52]

210.    Marriott must approve any independent marketing or advertising the franchisee wishes to engage in.[53]

211.    Upon information and belief, Marriott reviewed and approved the Marriott Videos posted to the Franchised Social Media Pages, including but not limited to the use of the Sony Music Recordings in such videos.  Marriott was aware that the use of such Sony Music Recordings was a violation of copyright law as the terms of use of the social media platforms at issue specifically warned Marriott that the use of copyrighted content without permission is prohibited.

212.    Marriott also has knowledge of the Marriott franchisees' infringing activity as it reviews and tracks posts made referencing the Marriott-franchised hotels.

213.    Upon information and belief, Marriott tracks social media posts that tag Marriott's properties, including those made by franchised hotels.

214.    Again, Marriott employs "social media experts" who "surface Twitter, Facebook,

---

[52] *Id.*
[53] *Id.*

Instagram and Weibo public posts" tagging "one of [Marriott's] 6,000-plus properties."[54]

215.   Like the Marriott-managed properties, Marriott was aware of specific infringing posts by Marriott franchisees that Sony Music specifically identified in prior communications, and through additional specific notices sent by or on behalf of other third-party content owners or the platforms themselves.  Despite that knowledge, to this day, Marriott permits its franchised hotels to continue to post videos containing Sony Music sound recordings.

216.   Marriott causes or materially contributes to the franchisees' infringement by allowing the franchisees to continue to post the Marriott Videos on the Franchised Social Media Pages.

217.   On information and belief, Marriott, through its agreements with the franchised hotels, has the right to remove, or cause its franchised hotels to remove, the Marriott Videos from the social media channels at issue, but has decided to remove or require removal of only a small fraction of the infringing videos Sony Music previously identified.

218.   Upon information and belief, Marriott, through its agreements with the franchised hotels, has the right to penalize its franchisees or even terminate its relationship with the franchised hotels for violations of federal law, including copyright law.  Yet, Marriott has refused to penalize its franchisees or end its relationship with such hotels despite its knowledge of these hotels' infringing activity, instead choosing to continue to offer its services, including its marketing services, to assist with, approve, and implement the infringing advertising, lending its brand name and trademark to the franchisees for use in advertising and administering a Marketing Fund "for advertising, sales and marketing, promotional programs, and research for Marriott hotels and [ ] in the United States and Canada."[55]

---

[54] *Supra*, note 49
[55] *Supra*, note 19 at p. 75

**H.    *Secondary Infringement by Marriott for Influencers' Activities***

219.    Marriott has also engaged in secondary infringement through its reliance on third-party influencers to advertise the company and its products or services and drive sales.

220.    For example, in the infringing video pictured in Figure 6 below, which exploits the Sony Music Recording "SexyBack" by Justin Timberlake, the influencer demonstrated their connection to Marriott through the "Paid Partnership" tag, and by tagging the Marriott Bonvoy corporate account.

221.    The caption also indicates that the post was a paid advertisement through the use of the #ad hashtag.



**<u>Figure 6</u>**

222.    Marriott derives a direct financial benefit from the highly promotional nature of the Marriott Influencer Videos posted by Marriott's influencers, driven by the unlicensed music, which encourage consumers to stay at the Marriott-owned, Marriott-managed and Marriott-

franchised hotels and pay for the services and facilities offered at those hotels by, among other things, including links to sign up for Marriott programs that provide booking discounts.

223.    Marriott also receives a direct benefit from the influencer's infringement through increased brand awareness as a result of the Marriott Influencer Video advertisements as the Marriott Influencer Videos not only reach individuals that are fans of the music and/or artist of the track used in the advertisements but also the influencer's followers.

224.    The Marriott Influencer Videos posted by Marriott's influencers to their own pages are a low-cost alternative to hiring a third-party advertising agency to create commercials, in order to avoid paying the copyright owners, and provide Marriott with the same direct financial benefit.

225.    Marriott has the right and ability to control the infringement as it has the right to review, approve and/or require removal of Marriott Influencer Videos.  Despite this, Marriott has continued to allow its influencers to post infringing videos.

226.    Marriott states it "reserve[s] the right to reject or remove [influencer] sites at any time, for any reason" including if the channel "[v]iolates intellectual property of Marriott or any third party."[56]

227.    Upon information and belief, Marriott maintains the right and ability to control its influencers' infringement even aside from any formal contract, as there is nothing stopping Marriott from placing conditions on provision of commissions or other consideration to influencers, such as compliance with copyright laws, or from penalizing influencers or terminating relationships with influencers who infringe.  Yet, Marriott has refused to penalize its influencers or end its relationship with them despite its knowledge of their infringing activity.

228.    Marriott also has knowledge of its influencers' infringing activity (or has reason to

---

[56] https://www.marriott.com/content/dam/marriott-digital/fp/apec/hws/a/aqafp/en_us/document/assets/fp-aqafp-affiliate-program-faqs-39381.pdf

know or is willfully blind to such infringing activity) and causes or materially contributes to the infringement.

229.    In addition to its review and approval of the Marriott Influencer Videos, some of these posts contain hashtags signifying that they are ads, "sponsored" or were made via a "paid partnership" with Marriott.

230.    Marriott's influencers generally tag Marriott's corporate accounts, which also gives Marriott direct knowledge of the infringing use because Marriott receives a notification from the relevant platform each time it is tagged and upon information and belief it reviews posts that tag Marriott accounts, as Marriott "employs "social media experts" who "surface Twitter, Facebook, Instagram and Weibo public posts" tagging "one of [Marriott's] 6,000-plus properties."[57]

231.    Marriott Influencers also create posts in conjunction with a Marriott brand and/or hotel where the Marriott brand and/or Marriott hotel and the third-party have agreed to be collaborators on a particular post and as a result the usernames for both accounts appear on the post, the post appears both on the third-party's social media page and the social media page for the relevant Marriott brand or property, and the post is shared with the third-party's followers and the followers for the relevant Marriott brand or property.

232.    For example, the infringing video pictured in Figure 7 below, which exploits the Sony Music Recording "Stay With Me" by Calvin Harris, is a collaboration post between the influencer @bexventure and the Marriott-managed hotel SLS Beverly Hills.

---

[57] *Supra*, note 49



**Figure 7**

233.    Marriott actively reviewed, selected, copied, re-posted, and shared infringing content created by its influencers to the Marriott Social Media Pages, (including by employing individuals responsible for "[c]ultivat[ing] influencer relationships by sourcing talent and executing agreements with influencers to carry the Marriott message across their platforms,"[58] and "implement[ing] social influencer program[s])."[59]

234.    Marriott has also commented directly on certain Marriott Influencer Videos.

235.    Marriott induces or contributes to its influencers' infringement by employing a "Dedicated Affiliate Team", which it touts as a "highly experienced team of online marketers who are here to help [Marriott influencers] succeed."[60]

236.    Marriott also induces or contributes to its influencers' infringement by providing the "raw materials" (i.e., hotel stays and amenities) for the creation of the Marriott Videos and

---

[58] https://www.linkedin.com/in/laura-troy-b918302b
[59] https://www.linkedin.com/in/markindre
[60] https://www.marriott.com/marriott/affiliateprogram.mi

permitting influencers' to film the hotel and employees, as well as a platform on which the Marriott Influencer Videos can be widely shared.

237. Marriott's compensation of influencers for creation of the Marriott Influencer Videos—including by way of free or discounted stays, vouchers or gift certificates for hotel amenities, or other items of value—also constitutes material contribution and inducement.

## DAMAGE TO SONY MUSIC

238. Marriott's infringements rob Sony Music of the substantial licensing revenues it is entitled to for use of the Sony Music Recordings.

239. Marriott's infringements undermine Sony Music's investments in its artists and recordings, and deprive those artists of revenue.

240. In addition to the license fees Sony Music should have received from Marriott and its influencers, other potential licensees may have been less likely to use a Sony Music sound recording that was used by another brand.

241. Marriott's infringing conduct also induces other businesses to believe that they can use Sony Music's sound recordings in advertisements without paying for the right to do so.

242. The unauthorized use of Sony Music's sound recordings substantially interferes with its and its artists' right to determine whether to license use of a particular sound recording at all, and their right to decide what brands should be able to use their music to promote its products or services.

243. Marriott has caused Sony Music irreparable harm, and damages in an amount to be determined at trial.

## MARRIOTT'S INFRINGEMENT IS WILLFUL

244. Marriott's infringement is knowing and willful.

245.     On numerous occasions since January 2020, Sony Music has repeatedly given Marriott notice of infringing posts, and of Marriott Social Media Pages containing infringing content.

246.     On information and belief, Marriott has also received notices regarding the unauthorized use of copyrighted music from the social media platforms themselves and/or from other content owners.

247.     In 2021, Marriott was sued for precisely this issue: the unauthorized use of copyrighted content on social media. *Greetings Tour Inc. v. Marriott International, Inc. et al.*, 21-cv-09336 (C.D. Cal. 2021).

248.     Nonetheless, Marriott has continued to post new infringing videos and has continued to make previously posted infringing videos (including videos Sony Music had specifically identified to Marriott) available long after learning of Sony Music's claims.

249.     Sony Music first gave Marriott notice of infringing videos that used Sony Music sound recordings on January 16, 2020.

250.     Sony Music continued to identify additional infringing videos to Marriott, on November 2, 2020, March 16, 2021, March 22, 2022, and March 22, 2024.

251.     The majority of infringing uses listed in **Exhibits 1 and 2** are uses that were posted after Sony Music made Marriott aware of its infringing conduct and significant number of those videos were previously identified to Marriott.

252.     Of the videos listed in **Exhibits 1 and 2** containing unauthorized Sony Music previously identified to Marriott, at least 166 are still available on the Marriott Social Media Pages as of the time of filing.

253.     Sony Music has continued to discover new infringements on the Marriott Social

Media Pages, including approximately 675 new exploitations of Sony Music recordings, many of which remain available as of this filing.

254.    At least forty-seven of the infringements Sony Music has identified were posted in the month of May alone, and dozens of those videos were posted to Instagram Stories.

255.    Upon information and belief, Marriott and its managed and franchised hotels are making a concerted effort to avoid detection by posting infringing content to Instagram Stories, which are only available for twenty-four hours.

256.    Upon information and belief, Marriot-managed hotels, Marriott's franchisees, and Marriott's influencers continue to post infringing videos, and refuse to take down infringing content.

257.    At the time Marriott and/or its managed and franchised hotels made and/or posted the Marriott Videos, they were aware of the requirements of the United States Copyright Act and the need to obtain licenses from Sony Music before using any of the Sony Music Recordings.

258.    In at least one instance, Marriott has previously entered into a license with Sony Music in 2019 for use of a Sony Music sound recording in an online video advertising its Sheraton brand hotels.

259.    Marriott employs "Music Directors" as part of a team of "music industry experts" to serve as its "Global Music Collective."[61]  These employees are tasked with "advis[ing]" Marriott on its "ongoing music initiatives."[62]  As "music industry experts," these Marriott employees know of the need to obtain a license for the use of copyrighted music.

---

[61] https://news.marriott.com/news/2019/10/08/she-sets-the-score-w-hotels-announces-appointment-of-leah-chisholm-as-music-director-north-america
[62] *Id.*

260.    In at least one instance, Marriott ran a social media contest on TikTok and instructed third-party entrants that their "[e]ntries should not include music protected by a copyright" unless the entrant "own[s] [it] or ha[s] the rights to use" it.[63]

261.    Further indicating Marriott's willfulness, the terms of service of each of the social media platforms used by Marriott make clear to users that the use of copyrighted music without a license is strictly prohibited.

262.    YouTube's Terms of Services[64]ate that any content a user uploads to YouTube "must not include third-party intellectual property (such as copyrighted material) unless [a user] ha[s] permission from that party or [is] otherwise legally entitled to do so."

263.    Facebook's Music Guidelines[65], which are also incorporated into Instagram's Terms of Use, state that "[u]se of music for commercial or non-personal purposes in particular is prohibited unless you have obtained appropriate licenses."

264.    At least as early as April 2018, Instagram's Terms of Use[66] incorporated Music Guidelines found on Facebook's website which specifically prohibit the commercial use of music without an appropriate license.

265.    For commercial uses, Instagram provides access to a separate Sound Collection through Facebook, "which are entirely royalty free and safe to use in Reels and Instagram Stories, including for commercial purposes (such as an ad)."[67]

266.    None of the Sony Music Recordings in the Marriott Videos are included in Instagram's "Sound Collection" audio library.

---

[63] https://30stays300days.marriott.com/
[64] https://www.youtube.com/static?template=terms
[65] https://www.facebook.com/legal/music_guidelines
[66] https://help.instagram.com/581066165581870
[67] https://m.facebook.com/help/instagram/402084904469945?dl_redirect=1&wtsid=rdr_0iILhouiviKP3oagi

267.     Instagram expressly states that access to its licensed music library is subject to its agreements with rights holders which are "intended to enable personal, non-commercial uses of music."[68]

268.     Facebook's Terms of Service and Music Guidelines[69], which also apply to Instagram, cautions users that they "may not use [their] Products to do or share anything . . . that infringes or violates someone else's rights, including their intellectual property rights" and provides that "[u]se of music for commercial or non-personal purposes in particular is prohibited unless you have obtained appropriate licenses."

269.     Marriott and its influencers were required to agree, and did agree, to these social media platforms' terms of use each time they created accounts on these platforms.

270.     Marriott posted numerous Marriott Videos exploiting Sony Music Recordings to both Instagram and Facebook *after* April 2018, in blatant disregard of the platforms' terms of use.

271.     Despite all of the foregoing, Marriott neither obtained, nor made any effort to obtain, any permission to use any of the Sony Music Recordings in the Marriott Videos.

272.     Even after January 16, 2020, when Sony Music notified Marriott of the infringing Marriott Videos, Marriott continued its wrongful conduct.

273.     Since January 16, 2020, Marriott has failed and refused to disclose the existence of additional infringing content that Sony Music did not initially identify or know about.

274.     Since January 16, 2020, Marriott failed to take down or require its managed and franchised hotels to take down many of the Marriott Videos.

275.     Since January 16, 2020, Marriott and/or its managed and franchised hotels posted *new* infringing content on the Marriott Social Media Pages in disregard of Sony Music's rights.

---

[68] https://help.instagram.com/402084904469945
[69] https://www.facebook.com/legal/music_guidelines

276.     Since January 16, 2020, Marriott, through its influencers, posted infringing content in disregard of Sony Music's rights.

## COUNT I:  DIRECT COPYRIGHT INFRINGEMENT

277.     Sony Music incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

278.     Sound recordings owned and/or controlled by Sony Music, including but not limited to, the Sony Music Recordings, are original, creative works and constitute copyrightable subject matter under the Copyright Act.

279.     Sony Music owned or controlled the copyrights to each of the Sony Music Recordings during the relevant times of Marriott's infringement.

280.     By its actions, Marriott's creation, posting, and distribution of the Marriott Videos infringes Sony Music's copyrights.

281.     Through these unauthorized uses, Marriott has unlawfully reproduced, prepared derivative works from and/or distributed the sound recordings listed in Exhibit 1 in violation of at least 17 U.S.C. § 106(1), (2), and (3), without any authorization, permission, license, or consent from Sony Music.

282.     Marriott's acts of infringement are knowing, deliberate, and in complete disregard for Sony Music's rights.

283.     Marriott's conduct constitutes willful copyright infringement under 17 U.S.C. § 504(c)(2).

284.     As a direct and proximate result of Marriott's infringement of Sony Music's copyrights and exclusive rights under copyright, Sony Music is entitled to its actual damages, including Marriott's profits attributable to the infringement, in amounts to be proven at trial,

pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Sony Music's election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

285.    Sony Music is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

<u>**COUNT II: VICARIOUS INFRINGEMENT**</u>

286.    Sony Music incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

287.    If Marriott is not directly liable for the infringing Marriott Videos on social media accounts of its managed and franchised hotels, Marriott is, at the very least, vicariously liable for the infringing Marriott Videos posted and/or created by the Marriott-managed hotels and Marriott franchisees.

288.    Marriott is also vicariously liable for the Marriott Influencer Videos posted and/or created by its third-party influencers.

289.    As described above, Marriott has the right, ability, and authority to control and supervise the creation and posting of videos created or posted by its influencers, Marriott-managed hotels, and Marriott franchisees.

290.    Marriott has failed to exercise its right and ability to control and supervise the infringing activity of its influencers, Marriott-managed hotels, and Marriott franchisees.

291.    As described above, Marriott receives a direct financial benefit from infringing videos posted by its influencers, Marriott-managed hotels, and Marriott franchisees, and from their use of Sony Music's sound recordings.

292.    Marriott's influencers', Marriott-managed hotels', and Marriott franchisees'

exploitation of the Sony Music Recordings in the infringing videos saves Marriott the cost of a license, increases Marriott's sales and revenue, enhances the visibility of Marriott's properties and services, and drives users that would not otherwise view Marriott's social media content to its accounts and pages that promote the Marriott brands. Marriott's failure to take any action has caused its managed and franchised hotels and third-party influencers to continue to use Sony Music sound recordings without authorization.

293.    Sony Music has been damaged, and will continue to be damaged, by Marriott's knowing, deliberate and willful acts of vicarious infringement.

294.    Sony Music is entitled to injunctive relief prohibiting Marriott from further acts of vicarious infringement.

295.    As a direct and proximate result of Marriott's vicarious infringement of Sony Music's copyrights and exclusive rights under copyright, Sony Music is entitled to its actual damages, including Marriott's profits attributable to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Sony Music's election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

296.    Sony Music is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## COUNT III: CONTRIBUTORY INFRINGEMENT

297.    Sony Music incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

298.    If Marriott is not directly liable for the infringing Marriott Videos on social media accounts of its managed and franchised hotels, Marriott is, at the very least, contributorily liable

for the infringing Marriott Videos posted and/or created by the Marriott-managed hotels and Marriott franchisees.

299.   Marriott is also contributorily liable for the Marriott Influencer Videos posted and/or created by its third-party influencers.

300.   As described above, Marriott induced and/or materially contributed to the infringing Marriott Videos posted and/or created by Marriott's managed hotels, franchisees, and influencers.

301.   As described above, Marriott knew, had reason to know, or was willfully blind that its paid influencers, Marriott-managed hotels, and Marriott franchisees used unlicensed copyrighted works in the infringing posts at issue because, among other things, Marriott employees closely track and monitor all social media posts that tag or otherwise mention Marriott, any of its brands, or any of its properties, actively reviewed infringing content created by influencers, Marriott-managed hotels, and Marriott franchisees, and upon information and belief has received specific notices sent by or on behalf of other third-party content owners or the platforms themselves.

302.   To the extent Marriott does not have actual knowledge, the systematic infringement by Marriott and its influencers, Marriott-managed hotels, and Marriott franchisees combined with Marriott's substantial investment in social media marketing generally, and influencers in particular, establishes that Marriott is aware of a high probability of infringement by its influencers, managed hotels, and franchisees, both consciously and intentionally.

303.   Marriott's conduct constitutes willful contributory copyright infringement.

304.   Plaintiffs have been damaged, and will continue to be damaged, by Marriott's acts of contributory infringement.

305.   Plaintiffs are entitled to injunctive relief prohibiting Marriott from further acts of contributory infringement.

306.   In addition, as a direct and proximate result of Marriott's contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to its actual damages, including Marriott's profits attributable to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

307.   Plaintiffs are entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment from this Court in Plaintiffs' favor against Defendant:

a.   A declaration that Marriott has willfully infringed Sony Music's copyrighted sound recordings in violation of the Copyright Act;

b.   A permanent injunction requiring Marriott and its agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of, any of Plaintiffs' rights protected by the Copyright Act;

c.   An order requiring Marriott to render a full and complete accounting to Plaintiffs for Marriott's profits, gains, advantages, and the value of the business opportunities received from its infringing activities;

d. For statutory damages pursuant to 17 U.S.C. § 504(c) for Marriott's *willful* infringement to the greatest extent provided by the Copyright Act, or, in the alternative, at Plaintiffs' election, Plaintiffs' actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

e. For an award of Plaintiffs' costs in this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

f. For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

g. For such other and further relief as the Court deems proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury of all issues that are so triable.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Sandra Crawshaw-Sparks (*pro hac vice* forthcoming)
David Munkittrick (*pro hac vice* forthcoming)
Anisha Shenai-Khatkhate (*pro hac vice* forthcoming)
Nicole Sockett (*pro hac vice* forthcoming)
Proskauer Rose LLP
11 Times Square
New York, NY 10036
Tel: 212-969-3000
scrawshaw@proskauer.com
dmunkittrick@proskauer.com
ashenai@proskauer.com
nsockett@proskauer.com

Dated: May 17, 2024

By: */s/ Jennifer Wasson*
   Jennifer Wasson (No. 4933)
   Andrew L. Brown (No. 6766)
   Hercules Plaza, 6th Floor
   1313 N. Market Street
   Wilmington, DE 19801
   Tel: (302) 984-6000
   jwasson@potteranderson.com
   abrown@potteranderson.com

*Attorneys for Plaintiffs*